# Richmond.

## ANDREWS & STONE v. FIDELITY LOAN & TRUST Co.

### November 23, 1904.

1. NEGOTIABLE NOTE—*Purchaser for Value—Notice of Equities.*—Where there has been a total failure of the consideration of a negotiable note, which was transferred before maturity for value, but it appears that such holder had notice of every fact affecting the transaction as between the original parties to the note at the time of the transfer, such holder is affected by all the equities existing between the original parties at that time. In the case at bar, the transferree knew the note was given for a deferred payment on a lot purchased of the then holder of the note; that there was a prior lien on the lot for much more than its value, which such holder was endeavoring to get released, and that unless it was released there would be a failure of the consideration of the note, and under these circumstances acquired title to it.

Appeal from a decree of the Circuit Court of the city of Roanoke, pronounced in a suit in chancery, wherein the appellants were the complainants, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*Scott & Staples,* for the appellants.

*H. T. Hall,* for the appellee.

KEITH, P., delivered the opinion of the court.

Andrews and Stone state in their bill that on the 19th of April, 1891, they purchased from the Exchange Building & Investment Company, a corporation whose principal office at that time was in the city of Roanoke, Virginia, two lots of land, at the price of $1,600, of which they paid $400 in cash, and executed two negotiable notes for $600 each, with interest from date, and payable in one and two years respectively; that they received a deed for these lots from their vendor, and executed a deed of trust of even date, conveying said lots to a trustee to secure the deferred payments; and that when the first of the notes became due they paid it; that they purchased these lots with the assurance from the Exchange Building & Investment Company that it had a clear and unimpeachable title, free from all leins and encumbrances of every description, and that relying upon these representations they made the cash payment and paid the first note; that after the first note had been paid they discovered that there was a deed of trust on these lots to secure Thomas Lewis, and that the balance due him was in excess of the value of the property liable under the deed; that in the year 1893, after their last note had matured, they were informed by the Fidelity Loan & Trust Company of Roanoke city that it claimed the last maturing note and demanded payment thereof; that they declined to pay the said note, saying that the title to the lots for which it was given was bad by reason of the trust deed resting upon it in favor of Thomas Lewis, and that the consideration for the note had failed; that the president of the Fidelity Company then assured them that the Lewis deed had been released, and that when it acquired the note from the Exchange Company the latter agreed to have the Lewis deed released on all of the property for which the notes transferred to it were given, and instructed its attorney to make out a list of

said lots; that the attorney had furnished the list to the Fidelity Company, and that the president was afterwards informed that the release had been obtained. Andrews and Stone insisted that no such release had been executed, and they were subsequently informed that the Exchange Company, in obtaining the release, had accidentally omitted the lots in question.

On the 9th of July, 1894, the Exchange Company conveyed to James R. Terry, trustee, all of its property to secure its creditors; and on the 16th of March, 1895, the Fidelity Company instituted an action against Andrews and Stone upon the unpaid note for $600, claiming that they held it as endorsee for value before maturity, and without notice.

The deed of the Exchange Company to Andrews and Stone, dated April 9, 1891, contains the following covenants:

"The said Exchange Building & Investment Company covenants that it has the right to convey the said land to the grantee; that it has done no act to encumber the said land; that the grantee shall have quiet possession of the said land free from all encumbrances; and that it will execute such further assurance of the said land as may be requisite."

From these facts it appears that the position of the plaintiffs, Andrews and Stone, may be stated as follows:

That they purchased certain lots which were represented as being free from encumbrance for which they took a deed from their grantors containing the covenants just recited; that they paid a part of the purchase money; that there is a balance due by them, represented by a negotiable note which had been endorsed, which is now held by the Fidelity Company as endorsee for value and before maturity; that at the time of these transactions there was a lien upon these lots in favor of Thomas Lewis; that when the note was transferred to the Fidelity Company, it was agreed and understood between the Exchange Company and the Fidelity Company that the primary lien upon the

lots purchased by Andrews and Stone was to be released by Thomas Lewis, but that owing to some inadvertence or accidental omission no such release was ever executed, and that the Fidelity Company took the note with full knowledge of these facts.

Upon this bill an injunction was obtained. The Exchange Company filed its answer, which is unimportant, the issues having been made upon the answer of the Fidelity Loan & Trust Company. That answer, besides immaterial averments which we do not deem it important to consider, says: "That if there was any failure of the consideration for said note, or fraud in its procurement, it had no notice of it, and having obtained the said note prior to its maturity, without such notice, in due course of trade, its right to collect the same is unimpaired by reason of such failure or fraud as may have existed. But respondent does not believe that there has been any fraud in procurement of said note, or failure in the consideration therefor, and calls for strict proof of the same."

It was agreed between plaintiffs and defendant that in the suit of *Cocke, Trustee,* v. *Lewis and others,* brought to enforce the lien of the deed of trust given by the Exchange Building Company to secure Thomas Lewis the deferred payments of purchase money on a tract of land known as the Exchange Building & Investment Company's addition to the city of Roanoke, the lots of Stone and Andrews constituted a part of said tract, and were sold to satisfy a lien in favor of Lewis. Depositions were taken in the cause, and the Circuit Court decreed "that the Fidelity Loan & Trust Company is a *bona fide* holder for value, and without notice, of the note of complainants referred to in the bill" which was dismissed, and the case is before us upon an appeal.

As between Stone and Andrews and the Exchange Company, the original parties to the note in controversy, there has been a

complete failure of consideration. Their note was given as part of the purchase price of two lots bought by Stone and Andrews of the Exchange Company, which in its deed covenanted that it had the right to convey, that it had done no act to encumber the land, and that the grantees should have quiet possession thereof free from all encumbrances. When that covenant was given there rested upon the land a lien for the purchase money, evidenced by a deed of trust of record, from the Exchange Company to Thomas Lewis, from whom it had derived title. This lien was superior to any right which the Exchange Company could pass by its deed. Its covenant with Stone and Andrews, therefore, was broken at the instant when it was given, and the right of Stone and Andrews to set off this paramount lien against any demand by the Exchange Company for payment of their note was complete. By virtue of this paramount lien these lots were sold under decree of court, were purchased by Thomas Lewis to satisfy a lien in his favor, a deed made to him, and the lots, the purchase price of which constituted the consideration for the note now demanded of them, are wholly lost to Andrews and Stone; and it is plain that the Exchange Company could not recover as against them. The only question open for consideration is, did the Fidelity Company have notice of the equities of the appellants affecting the Exchange Company.

In considering this question, we shall not rely upon implied or constructive notice, growing out of the fact that the same individual was president of both companies, and that other officials were common to them; nor upon the recordation of the Lewis deed. In our opinion the evidence is sufficient to establish actual notice to the Fidelity Company of every important fact affecting the transaction between the Exchange Company and Stone and Andrews.

"Q. It is alleged in the bill, Mr. Engleby, that one of the

notes, the note last maturing for $600.00, executed by Stone and Andrews, was transferred and assigned to the Fidelity Loan & Trust Company, or acquired by it by virtue of a deed of trust executed by the Exchange Building & Investment Company. Will you please state whether or not the Fidelity Loan & Trust Company acquired that note, and under what circumstances?

"A. My impression is that (and I know it to be a fact) these notes were transferred to the Fidelity Loan & Trust Company some time before this deed of trust was given."

The deed of trust here referred to is the general assignment from the Exchange Company to James R. Terry, trustee.

Continuing, the witness says:

"Q. Under what circumstances were they transferred to the Fidelity Company?

"A. When the note due Col. Thomas Lewis by the Exchange Building Company became due, the Exchange Company did not have money enough in hand to pay the same to him. They arranged to borrow a part from the Fidelity Loan & Trust Company, using the notes due the Exchange Company from lot purchases as collateral. The note of Stone and Andrews was amongst these notes.

"Q. Was the Fidelity Loan & Trust Company aware of the object of this loan?

"A. Yes, sir.

"Q. Was it not aware of the existence of the deed of trust to Col. Lewis?

"A. As president of the Fidelity Loan & Trust Company I was aware of it myself. I do not know whether all the directors were or not.

"Q. Was the Fidelity Loan & Trust Company or not aware of the fact that there was a lien on the lots, which secured these notes that were to be transferred to them for the loan?

"A. Yes, sir.

"Q. Did they make any arrangements, Mr. Engleby, with regard to that lien, as to what disposition was to be made of it, or whether or not the lien was to be released as to the lots which secured these notes, that were sold to the Fidelity Company?

"A. It was understood that all of the notes taken in this deal were to be clear, except as to the deed of trust given by parties who had made these paper notes.

"Q. In other words, the deed of trust securing the notes themselves?

"A. Yes, sir.

"Q. Do I understand that these notes were to be given to you and all liens on the property, securing these notes, were to be released except the liens which were given to secure the notes themselves?

"A. Yes, sir.

"Q. Mr. Engleby, state whether or not this money which the Fidelity Company was to loan, was to be applied in securing the release of these notes?

"A. Yes, sir.

"Q. Do you know why it was that the lien on the lots of Stone and Andrews was never released.

"A. The only explanation I can give of that is, that it was an error, or oversight, in not having those particular lots released, as we did not contemplate taking a single note that was not properly released. The Exchange Company had some trouble in getting the release of their property, according to their former agreement with Lewis. He refused to carry out this part of the contract, until a suit was entered into, and has never carried out that part of the contract."

And upon cross-examination this witness further testified as follows:

"Q. Who negotiated that loan on behalf of the Exchange Building & Investment Company?

"A. Mr. C. B. Moomaw and myself—Mr. Moomaw as secretary and treasurer, myself as president of the company.

"Q. Is it not a fact that you appeared before the Board of Directors, or took the matter up with the officers of the Fidelity Company, and negotiated the loan yourself, without Mr. Moomaw's having any direct connection with the negotiations?

"A. I do not recall that exactly. I know I had the most to do with it. Whether he appeared with me I am not able to state.

"Q. Was this matter submitted to the directors before the loan was granted, or was it negotiated with you as president of the Fidelity Company?

"A. It was talked over with them, yes, sir; Col. Lewis himself being on the Finance Committee at the time.

"Q. So you are certain that it was discussed either before the Finance Committee, or the Board of Directors?

"A. Yes, sir.

"Q. And that it was with their approval that the loan was made?

"A. Yes, sir.

"Q. Was there any resolution of the board authorizing this loan?

"A. I do not know that there was. They seldom did that.

"Q. Now you say that the Fidelity Company knew of this lien in favor of Col. Lewis, and that the object of this loan was to pay off that lien?

"A. I could state that the Board, or its directors or officials did, and the Finance Committee, before whom this matter was brought, and it was explained to them—the position.

"Q. You say that the matter was gone over either with the Board of Directors, or the Finance Committee, at the time?

"A. Yes, sir.

"Q. And that those facts were explained to them?

"A. Yes, sir.

In Daniel on Negotiable Instruments, Vol. 1, sec. 796, the law is stated thus: "If the circumstances are of such a character as to create such a distinct legal presumption and *prima facie* proof of fraud, or of some equity between prior parties, it would operate as legal information and constructive notice to the transferee. This rule fixes a criterion for judgment which is definite, and seems to us the one which should be adopted. The proof of the existence of the circumstances amounting to implied notice must be clear. As said by Woodbury, J.: 'It must clearly appear that the indorsee was apprised of such circumstances as would have avoided the note in the hands of the indorser.'" *Perkins* v. *Challis*, 1 N. H. 254.

In conclusion, the case is as follows: As between Stone and Andrews and the Exchange Company, there was such a failure of consideration as precluded a recovery by the Exchange Company against Stone and Andrews; that the Exchange Company transferred the note in question, before its maturity, to the Fidelity Company, which therefore comes before the court with a presumption in its favor that it is a holder for value and without notice; that this presumption is overcome by the testimony, which proves notice of every fact affecting the transaction, as between the original parties to it, and the note in the hands of the Fidelity Company is affected by all the equities existing in Stone and Andrews as against the Exchange Company at the time of its transfer to the Fidelity Company.

For these reasons we are of opinion that the decree of the Circuit Court must be reversed.

*Reversed.*